## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS

      Plaintiff,

      v.                                                  Civil Action No.

THE TOWN PLYMOUTH, MASSACHUSETTS,
THE TOWN OF PLYMOUTH,
MASSACHUSETTS ZONING BOARD OF
APPEALS, and PETER CONNER, MICHAEL
MAIN, DAVID PECK, WILLIAM KEOHAN and
EDWARD CONROY, in their capacities as
Members of the TOWN OF PLYMOUTH,
MASSACHUSETTS ZONING BOARD OF
APPEALS

      Defendants.

## COMPLAINT

## INTRODUCTION

1.      This action arises from the unlawful denial by the Zoning Board of Appeals of the

Town of Plymouth, Massachusetts (the "ZBA" or "Board") of an application by Cellco

Partnership d/b/a Verizon Wireless ("VzW" or "Plaintiff") for a special permit to install, operate

and maintain a wireless communication facility (the "Facility") located at 18 and 19 Lynn Circle,

Plymouth, Massachusetts 02360 (the "Property").

2.      The Plaintiff sought approval of its application for a special permit (attached

hereto as Exhibit A) in order to erect a 150' monopole with antennae and a supporting equipment

shelter and other appurtenant equipment installed within a fenced-in compound.  By constructing

the proposed Facility, VzW will be able to fill a significant gap in coverage that currently exists

in the area and to provide improved coverage to residents, businesses, and traffic corridors within

sections of Plymouth that are currently deficient.  After considering many alternatives, VzW selected 18 and 19 Lynn Circle because it is the only feasible location to fill the existing gap in coverage.  The location chosen is the best location for the installation and operation of the Facility and represents the only means through which VzW can close the substantial gap in coverage under the Town of Plymouth's Bylaws.

3.      The Board's denial of the Plaintiff's special permit application violates Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 332 (the "TCA"), because it is not supported by substantial evidence in the written record and has the effect of prohibiting the provision of personal wireless services.  The decision also exceeds the authority of the Board and violates M.G.L. c. 40A (the "Zoning Law") because it is arbitrary and capricious.  The Plaintiff therefore seeks injunctive relief from this Court directing the Defendants to grant the Plaintiff's special permit application for the Facility and such other relief as this Court sees fit.

## PARTIES

4.      The Plaintiff, Cellco Partnership d/b/a Verizon Wireless, is a general partnership formed under the laws of the State of Delaware with an address of One Verizon Way, Basking Ridge, New Jersey 07920.  With its operational affiliates, the Plaintiff is licensed by the Federal Communications Commission to provide personal wireless services throughout the United States and specifically in the Commonwealth of Massachusetts.  It is registered with the Secretary of State to do business in the Commonwealth of Massachusetts.

5.      The Defendant Town of Plymouth, Massachusetts is a municipal corporation duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 11 Lincoln Street, Plymouth, Massachusetts 02360.

6.      The Defendant Town of Plymouth Zoning Board of Appeals is an instrumentality of the Town of Plymouth with a principal place of business at 11 Lincoln Street, Plymouth, Massachusetts 02360.  The Zoning Board of Appeals acts as the Town's Special Permit Granting Authority in accordance with M.G.L. c. 40A, § 9.

7.      The individual named Defendants are the members of the Plymouth Zoning Board of Appeals: Peter G. Conner of 154 Micajah Pond Rd., Plymouth, MA 02360, Michael D. Main of 28 Janet St., Plymouth, MA 02360, David B. Peck of 16 Overlook Rd., Plymouth ,MA 02360, William J. Keohan of 19 Fremont St., Plymouth, MA 02360, and Edward C. Conroy of 21 Rollingwood Lane, Plymouth, MA 02360.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 as the Plaintiff's claims arise under the following sections of the United States Code:

a.      47 U.S.C. § 332(c)(7)(B)(iii), which requires any decision denying a request to place, construct, or modify a personal wireless service facility to be in writing and supported by substantial evidence contained in a written record;

b.      47 U.S.C. § 332(c)(7)(B)(i)(II), which states that the regulation of the placement, construction, and modification of personal wireless service facilities by any state or local government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

c.      47 U.S.C. § 332(c)(7)(B)(v), states that any person adversely affected by any final action or failure to act by a state or local government or any instrumentality thereof pursuant to the aforementioned sections of United States Code may commence an

action in any court of competent jurisdiction within 30 days after such action or failure to act and that the court shall hear and decide such action on an expedited basis.

9.      This Court has supplemental jurisdiction under 29 U.S.C. § 1367 over the state law claims asserted because they are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy and arise from the same common nucleus of operative facts.  Plaintiff brought this complaint within 20 days of the Plymouth Zoning Board of Appeals' filing of its decision with the Town Clerk, as required by M.G.L. c. 40A, § 17.

10.     Venue is proper pursuant to 28 U.S.C. § 1392(b)(1) because the Defendants reside in this district, and pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred here and a substantial part of the property that is the subject of the action is situated here.

## STATEMENT OF FACTS

### Plaintiff's Significant Gap in Coverage within its Network

11.     Plaintiff is a Federal Communications Commission ("FCC") licensed provider of personal wireless services, in the 700 MHz and 1710-1755 and 2110-2155 MHz frequency bands.

12.     Plaintiff is one of the nation's leading providers of wireless communications services, extending coverage to almost all of the top 100 markets in the United States.  It has developed one of the largest and most reliable national wireless networks and provides wireless voice and data services to an ever-growing number of connections, last counted at over 114 million.

13.     Plaintiff continuously works to enhance and improve its network with the ultimate goal of providing its customers with faster connections to people and information.  One of the key design objectives of Plaintiff's network is to provide seamless coverage without significant gaps or "dead spots."

14.     Wireless communication services use a line-of-sight technology, which requires radio signals to pass between towers and the end user's phone or mobile radio.  A tower's location is carefully selected so that its coverage area overlaps with those of other towers, such that the entire network provides contiguous and continuous coverage to wireless users located and traveling in that area.

15.     Plaintiff continues to add sites with its 4G LTE high-speed wireless broadband system in the 700 MHz, PCS, and AWS frequency bands, in accordance with its license from the FCC.  In order to expand and enhance its wireless services throughout New England, Plaintiff must fill existing coverage gaps and address capacity, interference, and high-speed broadband issues.  As part of this effort, Plaintiff determined that significant coverage gaps and insufficient network capacity exist in and around the southern section of Plymouth, while demand for services continues to increase at a substantial rate.  Due in large part to the distances between the existing sites, the intervening topography, and the volume of user traffic in the area, Plaintiff's existing facilities do not provide sufficient capacity and coverage to portions of Plymouth.

16.     Specifically, Plaintiff determined that the proposed site is needed to address significant coverage gaps in, but not limited to, the following areas:

     A.     Lunn's Way;

     B.     Raymond Road;

     C.     Bourne Road;

      D.       Little Sandy Pond Road;

      E.       Long Pond Road, south of Hedges Pond Road;

      F.       Herring Pond Road, between Long Pond Road and Bournedale Road; and

      G.       The surrounding roads, residential neighborhoods, and business areas.

17.     Plaintiff submitted to Defendants, with its application, coverage maps prepared by radio frequency engineers employed by Plaintiff showing graphic representations of such gaps and the impact that installing the proposed Facility would have on closing such gaps. *See* Exhibit A, Tab 5.

18.     The significant gap in coverage results in inadequate service for Plaintiff's customers within a substantial area of the Town of Plymouth.

19.     At the request of the Board, Plaintiff paid for a third party peer review conducted by IDK Communications of Littleton, Massachusetts, which confirmed that there is a gap in coverage in the Town of Plymouth which would be covered by having a Facility at 18 and 19 Lynn Circle as proposed by Plaintiff. Exhibit B (July 20, 2017 report).

**Site Selection Process**

20.     In selecting the Property as the location for the Facility to fill this significant gap in coverage, the Plaintiff considered the purpose and public policy behind the Plymouth Zoning Bylaws ("Bylaws"), and in particular relative to the Medium Lot Residential District (R-25 Zone) and Sections 205-3 and 205-17.I. Exhibit C (Relevant Portions of Bylaws). Pursuant to Sections 205-3 and 205-17.I, a wireless communication facility may exceed 35 feet in height by a special permit issued by the Board of Appeals. *Id.*

21.     To find a site that provides acceptable service, fills significant gaps in coverage, and provides adequate capacity relief, Plaintiff routinely uses computer modeling software to

define a search area within which a site could be located (assuming the wireless telecommunications facility is located at a sufficient height) that would have a high probability of addressing the significant coverage gap and meeting the capacity objectives established by Plaintiff's Radio Frequency ("RF") engineers.  *See* Exhibit A, Tab 5.  This is common practice in the industry.  Once a search area ring (SAR) is established, Plaintiff's real estate specialists search within the proximity of the defined area for existing buildings, towers, and other structures of sufficient height that would meet the defined objectives.  If none are found, then the focus shifts to "raw land" sites.  A suitable site must satisfy the technical requirements identified by the RF engineers, must be available for lease, and must have access to a road and be otherwise suitable for constructing a cell site of the required size and height.  Every effort is made to use existing structures to minimize the number of towers throughout the area being serviced.

22.     After a search of the area was completed in accordance with the requirements above, Plaintiff determined that there are no existing structures suitable for collocation with respect to its network requirements, and that constructing a monopole wireless communications facility at 19 Lynn Circle is the only feasible solution to address the targeted coverage and capacity gaps in Plymouth.

23.     During the site selection process, Plaintiff considered and evaluated several alternative sites.  One such site was the 18 Lynn Circle site where Plaintiff inquired as to whether it could collocate onto an existing Eversource transmission tower.  That request was denied by Eversource Energy and Plaintiff determined that there are no other existing structures suitable for collocation such that 19 Lynn Circle is the best solution to address the targeted coverage and capacity objectives.

24.     Plaintiff also considered the location of 836 Bourne Road, as suggested by the Defendants.  In 2015, Defendants issued a permit to Varsity Wireless to construct a telecommunications facility at that location.  The Special Permit was extended on January 18, 2017, but the construction has not started and there is no telling when or whether a tower will be built.  Plaintiff cannot collocate on a facility that may never be built and over which it has no control.

25.     Further, as was reviewed and discussed at the Board's hearing, Plaintiff provided Radio Frequency maps showing that the 836 Bourne Road location, which is 1.7 miles always from Plaintiff's proposed location, even if built would not fill the Plaintiff's coverage gap due to the large population, traffic and usage.  *See* Exhibit A, Tab 5; Exhibit D (RF Plot Maps and letter dated September 8, 2017).  Thus, 836 Bourne Road is not a feasible alternative.

26.     Plaintiff eventually found the Property at 19 Lynn Circle which was located in the bullseye of the SAR and was the only feasible option to adequately fill the gap in coverage.  This property is owned by Plymouth Water Company, which serves the area, and as noted above, is adjacent to high tension power lines of Eversource Energy which run through the area.  It is the least likely location to be visible from residential areas, and it will not impact utilities, traffic or other municipal services.

27.     Plaintiffs entered into a lease with Plymouth Water Company, owner of the Property, and received authorization to apply for any necessary zoning petitions, permits or any other approvals necessary for the installation of the Facility.

### Description of Proposed Facility

28.     Plaintiff's proposed Facility is a monopole.

29.     The proposed Facility will consist of a 150' monopole and a 50'x 50' fenced compound with a 16'x12' concrete equipment pad and protective ice shield with telecommunications equipment cabinets, a propane fueled back-up power generator, and utility connections located within the equipment compound.  The antenna array will be located at the top of the monopole at a centerline height of 146' AGL.  The proposed Facility will include a 500 gallon propane tank on a 5'x12' concrete pad within the fenced compound, Remote Radio Heads with accessory junction boxes and surge suppressors mounted along with the antennas, utility meters located just outside the fenced compound area, and an ice bridge from the proposed equipment cabinets to the proposed monopole to protect the cabling.  These antennae and associated equipment are typical of other wireless installations.  *See* Exhibit A, Tab 3.

30.     The purpose of the proposed Facility is to improve the quality, scope and capacity of Plaintiff's network coverage in Plymouth.  The Facility will be unmanned, allowing Plaintiff to provide service with no material impact on traffic or pedestrian safety.  Technicians will visit the Property 1-2 times a month for maintenance purposes.  There will be sufficient off-road parking along the access road to support maintenance vehicles when they visit.

31.     No additional buffer will be required because the proposal will not alter the existing surroundings.  The proposed location is adjacent to existing high tension power lines on property owned by the water company serving the area.

32.     The Facility will be galvanized steel, utility gray, to blend in with the surrounding electric company transmission towers.  *See* Exhibit A, Tab 3.

33.     The Facility is designed to have minimal impact on the Property and to minimize soil erosion and run-off.  Plaintiff agreed, in the course of constructing and maintaining the Facility, to establish and maintain soil erosion and sedimentation controls.

34.     The Facility will have no impact on water or sewer systems, storm water drainage, solid waste disposal or other public utilities.

35.     The Facility is in compliance with all environmental laws and regulations.  In addition, a letter dated June 16, 2017, was submitted from the National Heritage and Endangered Species Program of the Massachusetts Division of Fisheries and Wildlife confirmed that the proposal would not impact rare species.  Exhibit A, Tab 11.

36.     The Facility will comply with all applicable FCC standards and regulations.

37.     The Facility is consistent with the Plymouth Master Plan and applicable Site Development Standards, in addition to the purpose and public policies behind the Zoning Bylaws.

<strong>Application for Special Permit</strong>

38.     On May 26, 2017, Plaintiff submitted an application for Site Plan Approval in accordance with Section 205-17I of the Zoning Bylaws to the Board.  Additional copies of materials presented to the Board were submitted to the ZBA on September 8, 2017.  Exhibit D.

39.     In accordance with the Bylaws, the applications included, but were not limited to, the following:

A.     Petition Application for Special Permit;

B.     Project Narrative;

C.     Stamped Zoning Drawings;

D.     Zoning Denial Letter from Plymouth Department of Inspectional Services;

E.     Radio frequency report with Coverage and Capacity Maps;

F.     RF Emissions Report;

G.     Fully executed Memorandum of Lease Agreement;

H.       Evidence of FCC Licensure;

I.       Current Deed;

J.       Certified List of Abutters; and

K.       Final Determination by Natural Heritage & Endangered Species Program of the Massachusetts Division of Fisheries & Wildlife.

40.     Discussion of the application was held at the Planning Board meeting of August 22, 2017.

41.     The Planning Department engaged IDK Communications of Littleton, Massachusetts, pursuant to G.L. c. 44, s. 53G, to review the Plaintiff's application, and this review was paid for by Plaintiff.

42.     At the August 21, 2017 Planning Board meeting, the Planning Board provided an advisory opinion to the Zoning Board in which it did not recommend approval of the application.

43.     Under Sections 205-17I of the Zoning Bylaws, a structure over 35 feet high requires a special permit from the Zoning Board of Appeals.

44.     The ZBA held a public hearing regarding the Plaintiff's proposed Facility on September 6, 2017.  Voting members of the ZBA for Plaintiff's application were Peter Conner (Chairman), David Peck (Vice-Chairman) Michael Main, Edward Conroy, and William Keohan (Clerk).

45.     At the aforementioned public hearing, Attorney Peter D. Anderson represented the Plaintiff, during which he explained the need for the Facility, the proposed construction, and the manner in which the Facility complied with applicable zoning standards, state law and federal law.  The ZBA also heard testimony from Sean Mahoney, a Project Manager and Real Estate Acquisition Specialist with SAI Communications, LLC, and Keith Vellante, a Senior RF

- 11 -

Engineer with C Squared Systems, LLC, on behalf of Plaintiff who both testified as to the alternative sites considered and explained why they were not feasible or did not sufficiently fill the significant gap in coverage.  RF Engineer, Keith Vellante, further testified as to the significant gap in coverage as demonstrated by the site maps and explained why the proposed Facility was required to fill the significant gap in coverage and why alternative sites were not sufficient.  In particular, he explained that the previously permitted, but unbuilt, Varsity Wireless tower at location of 836 Bourne Road would not fill the substantial gap in Verizon's coverage. *See* Exhibit D; Exhibit E (Draft Minutes of September 6, 2017 Hearing).

46.     Despite all of the above, the ZBA unanimously (5-0) denied the Plaintiff's application for special permit because the members stated "it will be a nuisance to direct abutters and will detract from the visual character of the neighborhood."  The ZBA also believed, despite evidence to the contrary, that a 130' tower would provide adequate coverage with the potential for collocation and that Plaintiff had "not adequately demonstrated that there are no other feasible alternatives as the Town has recently approved other communication towers in this vicinity."  *See* Exhibit F (Zoning Board of Appeals Certificate of Decision on Special Permit).

47.     The ZBA's decision does not dispute that Verizon has a significant gap in coverage in Plymouth.  Rather, the decision is based upon the location and the Board's belief that its previous approval of a permit to another applicant is sufficient, even though Plaintiff's Engineer and reports provided undisputed evidence that the prior location, 1.7 miles to the southwest, would not fill the substantial gap in coverage.   *See* Exhibit F.

**The Telecommunications Act**

48.     Certain aspects of the regulation of personal wireless services are preempted by federal law under 47 U.S.C. §332(c)(7)(B).

49.     Congress enacted the TCA to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.

50.     Pursuant to FCC regulations in 47 C.F.R. § 27.14, the Plaintiff is obligated by the FCC to provide "substantial service" to the general public, which is defined as ". . . service which is sound, favorable, and substantially above a level of mediocre service . . ."

51.     In order to effectively compete with other providers of personal wireless services, Plaintiff has adopted and consistently applied a plan which includes continually improving its network to meet increasing coverage and capacity demands of its customers for the personal wireless services it provides.

52.     In order to provide an adequate level of service for its customers, the Plaintiff must deploy a network of wireless communication facilities.  The facility required depends on the installation height, frequency, power output, number of users, and the surrounding environment, among other facilities.  As explained above, these factors, considered in their entirety, dictate the specifications of the facility needed to provide the coverage the Plaintiff seeks to offer in a given area.  In the southern area of Plymouth, a 150' monopole located at 19 Lynn Circle is the only feasible and effective way of filling the existing gap and deficiencies in coverage under the Zoning Bylaws.

## STATEMENT OF CLAIMS

### Count I
### (Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)
### Prohibition of Wireless Services)

53.     Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

54.     The TCA provides that in regulating the placement and construction of wireless facilities, local governments "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).  This limitation applies even where a local authority's denial of an individual application pursuant to its own local ordinances is supported by substantial evidence."  *Industrial Tower and Wireless, LLC v. Haddad*, 109 F. Supp. 3d 284, 296-97 (D. Mass. 2015).

55.     Whether a denial constitutes an "effective prohibition" in violation of the TCA is a factual question for the court to resolve based upon the administrative record and additional evidence presented by the parties, and no special deference is afforded the local zoning board. *Id.* at 297 (citing *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 52 (1st Cir. 2009)).

56.     The First Circuit has identified two sets of circumstances in which a local board's denial of an individual application for a cell tower may constitute an effective prohibition of personal wireless services.  The first is where the town sets or administers criteria which are impossible for any applicant to meet and the second arises where the plaintiff's existing application is the only feasible plan such that denying the application effectively amounts to a prohibition on personal wireless service in the area.  *Second Generation Properties, L.P. v. Town of Pelham*, 313 F.3d 620, 629 (1st Cir. 2002).  The First Circuit generally requires proof by the applicant that there is (1) a significant gap in coverage and (2) that the local zoning board has rejected the only feasible plan which was that proposed by the applicant.  *Cranston*, 586 F.3d at 50.

57.     By substantial and uncontroverted evidence, the Plaintiff demonstrated to the ZBA that there is currently a significant gap in provision of adequate wireless services in certain areas of Plymouth, Massachusetts.  This evidence included multiple site maps and analysis by

Radio Frequency engineers.  The ZBA's decision does not dispute that a substantial gap in coverage exists.  Indeed, this coverage gap was confirmed by the peer review conducted at the Planning Department's request by IDK Communications.

58.     Additionally, the proposed facility was the only feasible plan to adequately fill the significant gap in coverage.  As stated previously, Plaintiff examined alternative sites, but they were not feasible and did not close the gap in coverage.  The specific location considered by the Board, 836 Bourne Road, was specifically shown not to be feasible by Plaintiff's Engineer and Radio Frequency Maps.  That location 1.7 miles southwest would not fill the substantial gap in Plaintiff's coverage.

59.     The ZBA's denial of the Plaintiff's proposed Facility will prevent the closing of a significant gap in coverage, with no alternative location feasible to close the gap.  The Board's Decision therefore constitutes a prohibition of wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

## COUNT II
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii)
### Failure to Support the Denial with Substantial Evidence in the Written Record)

60.     Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

61.     47 U.S.C. § 332(c)(7)(B)(iii) states that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  When evaluating whether a local board's decision is supported by substantial evidence, the court is confined to the administrative record before the board and must review that written record as a whole. *See Indus. Tower & Wireless, LLC*, 109 F. Supp. 3d at 296. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (citing *Green Mountain Realty Corp. v. Leonard*, 688 F.3d 40, 49-50 (1st Cir. 2012)). A local board is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands. *Id.*

62.    The ZBA's decision fails to adequately identify the relevant evidence and provide sound reasoning to support its decision for disapproval. It is not based on substantial evidence in the written record.

63.    With the Application, the Plaintiff submitted affidavits, records, analysis and other credible, scientific evidence into the written record, and supplemented that record with oral testimony from legal counsel and professional engineers. As stated more fully above, the materials submitted included but were not limited to: the application, project narrative, radio frequency reports, site plans, FCC license, and diagrams related to potential alternate sites.

64.    There is no objective or credible evidence in the written record of the ZBA proceedings that contradicts the evidence submitted by the Plaintiff or upon which a reasonable mind might accept as adequate to deny Plaintiff's Special Permit application.

65.    All reasonable inferences lead to the conclusion that alternate sites were adequately considered and that there are no alternative sites with less impact on abutting residential neighborhoods that can fill the coverage gap. The First Circuit has held that the TCA's goals of promoting competition in the wireless communications market and of relatively speedily effectuating the purpose of the Act impose their own constraints and must underlie the determination of feasibility. *See Cranston*, 586 F.3d at 51. Just as carriers must present evidence of their efforts to locate alternative sites, once they have done so there are limits to town zoning boards' ability to insist that carriers keep searching regardless of prior efforts to find locations or costs and resources spent. *Id.* at 51-52. Where an applicant has systematically searched for

solutions to the gap problem using technologically reliable criteria and methodologies, thoroughly explored and eliminated alternative possibilities, and reached a well-supported conclusion that a particular property is the only feasible site, the Board cannot claim it simply was not convinced.  *See Industrial Tower and Wireless, LLC*, 109 F. Supp. 3d at 303-04 (granting summary judgment to applicant where it met burden of showing the chosen property was the only feasible site on which to construct a cell tower that would remedy the substantial coverage gap and that further reasonable efforts to find another solution were so likely to be fruitless that it was a waste of time even to try).

66.     As previously noted and as evidenced by the Radio Frequency Report and in the draft Minutes, the Plaintiff evaluated alternate sites.  After evaluating existing sites, it eventually found the Property at 19 Lynn Circle, which was the only feasible option to fill the gap in coverage.  Additionally, out of all the sites considered, this site was in the bullseye of the target area.

67.     Specifically, the alternate site contemplated by the Board in referencing a "recently approved" communication tower "within the vicinity," was at 836 Bourne Road, which is 1.7 miles to the southwest.  Plaintiff's Engineer provided undisputed evidence that a Facility at this location would not fill Verizon's coverage gap.  Moreover, despite having initially been issued a permit in 2015, no tower has been built and there is no knowing when, or if, one will be built at that location.  *See* Exhibit E.  It was unreasonable for the ZBA to deny the application based upon the remote possibility that another facility may be built in the future, especially where that facility is not in a location suitable to fill the coverage gap.

68.     It was also unreasonable to deny the application based upon a finding that a 130' tower would be an adequate alternative while also satisfying the Board's requirement of

collocation.  It would not be possible to reduce the height to 130' and to provide collocation.

Plaintiff offered to reduce the height of the Facility to 130' without collocation, but it could not

do both.  Thus, the record does not support the Board's denial of a special permit because a 130'

Facility with collocation is not a feasible alternative.

69.     Further, it was unreasonable to deny the application as being a "nuisance" that

will "detract from the visual character of the neighborhood."  Such generalized concerns about

aesthetics are insufficient grounds for denial.  *Green Mountain Realty Corp.*, 688 F.3d at 53.

Contrary to this finding, there was sufficient evidence in the written record demonstrating that

the Facility will minimize visual impact.  The proposed location is on the property of the water

company which services the area and will be along existing high tension towers that run through

the area.  Additionally, the Facility will be a neutral color and will not contain any lighting.  The

ZBA's unsubstantiated position that the visual impact will be a "nuisance" is unreasonable.  The

Facility's proximity to a residential neighborhood is insufficient to support denial.  Such

generalizations, without more, can be used as a pretext to prohibit wireless telecommunication

facilities and therefore are inadequate to support a denial.  *See Heicher v. Dearborn Cty.*, 595

F.3d 710, 723 (7th Cir. 2010) (generalized aesthetic concerns are not alone sufficient to justify

the denial of a permit, rather an aesthetic judgment must be grounded in the specifics of the

case).

70.     The Board's failure to base the Decision on substantial evidence in the written

record violates 47 U.S.C. § 332(c)(7)(B)(iii).

**Count III**
**(Violation of Massachusetts General Laws c. 40, § 17**
**Legally Untenable, Arbitrary and Capricious Decision)**

71.     Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

72.     Massachusetts General Laws c. 40A, § 17 affords judicial review to any person aggrieved by a zoning decision, and the decision shall be annulled by the court if it was found to exceed the authority of the board of appeals or any special permit granting authority.  A zoning decision will be overturned where it was based on legally untenable grounds or was unreasonable, whimsical, capricious or arbitrary.  *Roberts v. Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 486-87 (1999).

73.     The Board's decision exceeds its authority and completely disregards the uncontroverted, credible, scientific evidence presented by the Plaintiff and is based upon criteria not contained in its Bylaws.  Because the ZBA offered no evidence or valid reasoning in support of denial, the Decision is unreasonable, whimsical, capricious and arbitrary, and exceeds the authority of the ZBA.

74.     Moreover, Section 205-17I of the Bylaws, is impermissibly vague, rendering it void, and therefore the Board's decision based on said provision is based on legally untenable grounds.

75.     Zoning bylaws and ordinances may not impose restrictions that are vague and ambiguous.  *See O'Connell v. Brockton Bd. of Appeals*, 344 Mass. 208, 212 (1962).  The provision leaves determinations of whether a facility will "not in any way detract from the visual character or quality" of the area to the untrammeled discretion of the ZBA without any standards upon which applications are to be judged.  Section 205-17I. Similarly, there are no criteria for

determining what will be considered an adverse impact on adjacent properties in the Bylaw's purpose or elsewhere.  The Bylaw's vagueness and lack of any standards to guide the ZBA's decision in whether to grant a special permit provides a pretext for the Board's arbitrary and capricious actions in violation of Chapter 40A, § 17.

76.     Likewise, the ZBA's denial based upon considerations not within the Bylaws, including but not limited to the ZBA claiming the Facility will be a "nuisance," also renders it arbitrary and capricious in violation of Chapter 40A, § 17.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court review this matter on an expedited basis pursuant to 47 U.S.C. § 332(c)(7)(B)(v), and make the following rulings, and grant the following requests for relief:

A.     Declare that the ZBA's decision prohibits the provision of wireless services in violation of § 332(c)(7)(B)(i)(I);

B.     Declare that the ZBA's decision is not based on substantial evidence in a written record as required by 47 U.S.C. § 332(c)(7)(B)(iii);

C.     Declare that the decision is arbitrary and capricious and based on legally untenable grounds and therefore invalid under c. 40A, § 17 of the Massachusetts General Laws;

D.     Declare that Section 205-17I is void for vagueness;

E.     Issue an injunction directing the ZBA to issue, without delay, the special permit and any other relief that may be required for the Plaintiff's proposed Facility, and directing the Town of Plymouth through its other boards and agencies to grant any further approvals required to construct said facility;

F.     Order that the ZBA's denial be annulled and that the Plaintiff's Application be approved;

G.      Award the Plaintiff the costs of the suit herein, including reasonable attorneys'

fees and interest; and

H.      Grant such other relief as may be just and proper.

The following Exhibits are attached hereto and incorporated herein by this reference:

A.      Application For Special Permit

B.      IDK Communications Peer Review Report

C.      Relevant Portions of Bylaws

D.      RF Plot Maps Submitted 9/8/17

E.      Draft Minutes of the ZBA 9/6/17

F.      ZBA Decision 9/6/17


                        Respectfully submitted,

                        CELLCO PARTNERSHIP, d/b/a
                        VERIZON WIRELESS

                        By its attorneys,

                        McLANE MIDDLETON,
                        PROFESSIONAL ASSOCIATION

Dated: October 3, 2017          By: */s/ Peter D. Anderson*
                            Peter D. Anderson, BBO #546469
                            Peter.Anderson@mclane.com
                            McLane Middleton, Professional Association
                            900 Elm Street, P.O. Box 326
                            Manchester, New Hampshire 03105
                            Telephone (603) 625-6464